UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION<br><br>This Document Relates to All Class Actions. | Case No. 14-cv-9662 (JSR) |

**OBJECTIONS OF SPENCER R. BUENO TO CLASS ACTION SETTLEMENT & OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES; NOTICE OF INTENT TO APPEAR; STATEMENT OF COUNSEL**

Joshua R. Furman
JOSHUA R. FURMAN LAW CORP.
14724 Ventura Boulevard, Suite 509
Sherman Oaks, California  91403
(818) 646-4300
*Pro Hac Vice Pending*

*Attorney for Objector*
SPENCER R. BUENO

May 11, 2018

## NOTICE OF INTENT TO APPEAR

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Objector SPENCER R. BUENO, by and through his counsel herein, intends to appear at the Final Settlement Hearing for this action June 4, 2018, at 10:00 a.m. at the above-entitled Court.

The purpose of Plaintiff-Objectors' appearance is to object to the proposed Settlement Agreement in this case and to respectfully request that the Court disapprove the same.

Dated:  May 11, 2018                    JOSHUA R. FURMAN LAW CORP.


                                        By:   /s/ Joshua R. Furman
                                              Joshua R. Furman
                                              *Attorney for Objector*
                                              SPENCER R. BUENO

Objector SPENCER R. BUENO respectfully submits his objections to the proposed settlement in this matter as follows:

I.

**INTRODUCTION**

While settlement of follow-on litigation after large corporations disclose institutionalized fraud and wrongdoing is not uncommon, this settlement comes as a surprise to many. The surprise is not only that it happened so quickly in relative terms, but that the ultimate settlement of all equity claims relating to one of the largest corporate frauds in world history is so low—and class counsel and class representatives expect to be awarded mighty premiums for selling the class short.

Class counsel has done at least some significant work in dealing with the class claims here, but the work of its damages expert is nowhere to be found in the settlement notice or other documents made available to absent class members. The hints of information that can be found point to a much higher damage calculation of nearly five times the gross settlement amount. *E.g.*, ECF No. 768 (In a secret letter that class counsel sought to hide from the class membership, it is suggested that five percent of Dr. Nye's calculation would be over $830,000,000.) Those calculations are more in line with the analysts' expected settlement value of this case at upwards of $10 billion.[1] To be sure, the total value of the settlement does not appear to reflect any

---

[1] Reuters, *Petrobras to pay $2.95 billion to settle U.S. corruption lawsuit* (available at https://www.reuters.com/article/us-petrobras-classaction/petrobras-to-pay-2-95-billion-to-settle-u-s-class-action-over-corruption-idUSKBN1ES0L2), Jan. 3, 2018 ("The settlement put an end to 'extremely high uncertainty' about the company's potential liability, JPMorgan said in a client note, adding that it had expected a figure above $5 billion. Analysts at Brazilian bank BTG Pactual said the market had expected a settlement of $5 billion to $10 billion.") (The article also notes that share prices responded positively to the news and, "Moody's brushed off concerns about the impact of the fine on the company's balance sheet, noting it was expected to generate some $30 billion in cash this year and make capital investments of around $15 billion."

Class counsel's firm, Pomerantz, itself links to another article in the Financial Times, stating "'This

consideration for the intentional wrongful acts that Petrobras carried out when they used shareholder money to fund criminal enterprises.

Significantly, in the absence of any public information about the ultimate damages calculations prepared by Dr. Nye, neither the Court nor the class members can evaluate the reasonableness of the settlement, the reasonableness of class counsel's fee request, or the reasonableness of the extraordinary incentive awards sought for the institutional ($300,000 for a single entity) and individual ($50,000 each) class representatives.  While class counsel makes unsubstantiated comments about the damage calculations in the motion for final approval (p. 16), these numbers are not supported by a competent declaration or expert analysis based on acceptable evidence and methodology.  In short, the class is in the dark when it comes to evaluating the settlement.[2]

The opacity of this process appears to have been no mistake.  In keeping with its secret side deals, the notice to the class and documents provided on the notice website omitted pertinent information concerning the merits of the settlement itself.  As a first issue, returning to the secret side deal described at ECF No. 768, the opt out percentage that would allow defendants to

---

has been one of the most important overhangs for Petrobras especially for the extremely high uncertainty around the value of this potential liability,' JPMorgan analysts Rodolfo Angele and Felipe Dos Santos said in a note. 'In our models, we [had] assumed a $5bn [payout] for the class action. ***We see this as good news for Petrobras***.'" Financial Times, *Petrobras reaches $2.95bn settlement in US investor lawsuit* (available at https://www.ft.com/content/10348f1e-f03e-11e7-b220-857e26d1aca4), Jan. 3, 2018 (emphasis added).

[2] The attempt to bolster the credibility of the settlement by providing a declaration of the mediator who negotiated the settlement is neither helpful, nor ethical. *E.g.*, *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 47515, at *31 (N.D. Cal. June 19, 2007) ("It is also no answer to say that a private mediator helped frame the proposal.  Such a mediator is paid to help the immediate parties reach a deal.  Mediators do not adjudicate the merits.  They are masters in the art of what is negotiable.  It matters little to the mediator whether a deal is collusive as long as a deal is reached. Such a mediator has no fiduciary duty to anyone, much less those not at the table. Plaintiffs' counsel has the fiduciary duty.  It cannot be delegated to a private mediator.")

withdraw was never disclosed. It is not improper to include the opt-out/withdraw option in the settlement, but that number is a material term of the agreement that class members have a right to know. Second, none of the exhibits to the Amended Stipulation and Agreement of Settlement were provided on the settlement notice website. These exhibits included such crucial information as the plan of allocation. While the plan of allocation is summarized in the long form settlement notice, class members have the right to review the entire settlement agreement itself to ensure (1) the notice accurately portrays the settlement terms and does not leave out loopholes or other shortfalls; (2) that there are not legally or ethically questionable issues raised in the undisclosed terms. That the mechanics of the proposed settlement are disclosed is not helpful when and if something goes wrong in the allocation or the parties have further disputes over items that were not negotiated or left to future discussions that may materially alter the impact on the class.

On that issue, this settlement is also flawed because it fails to address the issue of *cy pres* distributions. It is easily anticipated that a settlement of this size will include a *cy pres* distribution. The settlement agreement published on the website itself anticipates this. (ECF No. 767-1, ¶ 34.) However, the parties leave that to a later decision: "to an organization organized under Brazilian law, selected by the Petrobras Defendants and approved by Class Counsel." (*Id*.) The class members have a right to be heard on who the *cy pres* recipient will be. The parties cannot avoid Court approval of the *cy pres* recipient and comply with Rule 23(e). The *cy pres* recipient must be determined by the Court, under the required adversarial process, before the settlement can be approved.[3]

---

[3] The settlement suggests that the *cy pres* recipient will be a Brazilian entity "selected by the Petrobras Defendants and approved by Class Counsel, whose mission is to fight corruption and improve corporate governance in Brazil." First, how does the improvement of Brazilian corruption and corporate governance problems assist class members who were damaged under U.S. law? Second, what kind of entity is this anyway and how can class members be assured it is not just

4

Last, the settlement agreement itself is nearly impenetrable in its complexity and the claims process is overly difficult—particularly in light of the malfunctioning claims website. Class members are left with little advice on how to ensure that their claims are valid. Critically, there does not appear to be any appeals or review process for claims that are summarily denied by the administrator. The class members deserve some due process in determining their claims. Due process is hard to come by in this case, because the website does not appear to be fully function (objector herein spent substantial time inputting his significant holdings, but received an error and lost all the data at least once).

Further, as a separate and more grievous complication, the settling parties expect that a significant number of class members will received nothing, despite waiving their rights in the release. Based on the complexity of the dates, amounts, and variety of equities that may be subject to a claim, class members will only know if they get any payout, or what that payout is, well after the objection and opt-out deadlines have passed. If class members owned any of the subject equities during the class period, their rights are waived, regardless of whether they receive any compensation—and even if they are entitled to compensation under the plan of allocation and do not receive any because of the $10 minimum threshold for payout. (Which seems designed to ensure that some Petrobras-appointed *cy pres* recipient will get a significant kick-back.) The settlement plan of allocation should ensure that all class members subject to the release receive at least some compensation. The Court should not approve this settlement, which fails to recompense the class membership for the wrongs they have suffered, fails to prevent future wrongs, and fails to serve the purposes of class relief.

///

---

another shell for Petrobras graft?

## II.

## LEGAL ARGUMENT

### A.     The Standard for Approving Class Action Settlements

#### 1.     General Rule 23 Standards

Courts in the Second Circuit evaluate the reasonableness of a class action settlement applying the *Grinnell* factors.

> (1) the complexity, expense and likely duration of the litigation, [citation] ; (2) the reaction of the class to the settlement, [citation]; (3) the stage of the proceedings and the amount of discovery completed, [citation]; (4) the risks of establishing liability, [citation]; (5) the risks of establishing damages, [citation]; (6) the risks of maintaining the class action through the trial, [citation]; (7) the ability of the defendants to withstand a greater judgment, [citation]; (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [citation]; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, [citation].

*Detroit v. Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, the *Grinnell* factors disfavor approval of the settlement. The memorandum in support of approval of settlement only discusses a basic trial problem of the battle of experts, but assumptions that a jury cannot follow expert testimony are weak at best. The rest of the generalized statements of risk unpersuasively try to manufacture uncertainty where the liability is clear. In fact, the statutory principles at issue have been well-worn in the area of follow-on class action litigation following disclosures of negligent or criminal corporate activity.

### 2. Pre-Certification Settlements are Subject to Heightened Scrutiny

Because of the "special difficulties" a court encounters evaluating a class action settlement prior to (and in conjunction with) certification of the class, there must be an even greater showing of fairness and "much stronger indications of sustained advocacy by the *de facto* class counsel" before the settlement can be approved. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 805-806 (3rd Cir. 1995), citing *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) ("[W]hen the settlement is not negotiated by a court designated class representative the court must be doubly careful in evaluating the fairness of the settlement to the plaintiff's class."); *In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (attributing a need for heightened scrutiny of the settlement to the potential for collusive settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (higher showing of fairness required in pre-certification settlements, and special focus on assuring adequate representation and the absence of collusion); *Malchman v. Davis*, 706 F.2d 426, 434 (2d Cir. 1983); *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990); Manual for Complex Litigation 2d § 30.42 (citing the informational deficiencies faced by the court and counsel in pre-certification settlements).

The pre-certification issues here are particularly pronounced because this settlement treads uncertain ground with foreign and domestic investors lumped together as well as all manner of different equities with different rates, amounts, and theories of damage. The complexity of the settlement agreement, notice, and claims process show that there are significant issues with the certification of this class, even for settlement purposes. The risk posed to class members bound

by the release that their rights will not be adequately considered is too great to approve a vague, overbroad, and uncertain class.

### B. The Class Representation is Uncertain and Inadequate

Class Plaintiffs have the burden of demonstrating that a proposed class is properly subject to certification pursuant to Rule 23(a). *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 613–614 [117 S. Ct. 2231, 138 L. Ed. 2d 689] (1997).

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760, at 140 (3d ed. 2005). *See*, *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989) ("Though not specified in the Rule, establishment of a class action implicitly requires both that there be an identifiable class and that the plaintiff or plaintiffs be a member of such class"), abrogated on other grounds, *Amchem Products, Inc.*, 521 U.S. at 591. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

Each class must have a representative plaintiff that can adequately steward the interests of the class membership in the litigation. *See*, *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007), citing Fed. R. Civ. P. 23(a)(3) & (4); *Jones v. Ford Motor Credit Co.*, 2005 U.S. Dist. LEXIS 5381, at *19 (S.D.N.Y. Mar. 31, 2005). This analysis is not possible under the current settlement, and it must fail as a matter of law.

The class membership includes numerous de facto subclasses, which results in the labyrinthine claims process. Critically, the declarations of the class representatives are unclear as to what kinds of claims each class representative has for itself and whether it will be able to adequately represent the myriad permutations of claims by class members. Significantly, as addressed below, the primary class representative of USS is being paid off with $300,000 of improper incentives for "personnel time." Decl. Hill ISO Motion, ¶ 20. The independence of this settlement proponent is questionable.

  C. <u>**The Plan of Allocation is an Improper Claimant Fund-Sharing Scheme**</u>

The proposed settlement will force class members to go through an onerous claims process and then require a massive amount of cross-checking and data compilation in order to determine

9

class member claimant eligibility to receive payments. However, all of this work and appearance of actual claim calculation is subsumed by the fact that the ultimate distribution is on a pro rata basis. By operating on a pro rata basis, the proposed settlement actually provides for a fluid recovery in a claimant fund sharing scheme.

This approach has the benefit of providing direct, individual relief to class members, but is totally inappropriate to the extent that the silent class members receive nothing and class member who submit claims do not receive anything approaching their actual damages. See, *e.g.*, State *of California v. Levi Strauss & Co.*, 41 Cal.3d 460, 475–476 (1986). "***[T]he advantages of claimant fund sharing can only be realized where a large proportion of class members participate and submit accurate claims.***" *Id*. at 476, *citing* Durand, *An Economic Analysis of Fluid Class Recovery Mechanisms* (1981) 34 Stan.L.Rev. 173, 178.

The prospect is not uncontroversial (*e.g. Windham v. American Brands, Inc.*, 565 F.2d 59, 72 (4th Cir. 1977) ("Such a method of computing damages in a class action has been appropriately branded as 'illegal, inadmissible as a solution of the manageability problems of class actions and wholly improper.'"), quoting *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1018 (2d Cir. 1974)), and is not proper here because (1) the proofs of claim to be submitted will not be used to calculate class members' actual damages for the purposes of distribution, but only show that the class member is entitled to damages generally; and (2) the extremely large class will likely result in a small proportion of claims being actually made.

Contrary to the settlement proposal, a strict application of a fluid recovery distribution only approaches propriety when there is no proof of claim requirement, but the funds are distributed based on existing class member information. *See*, *e.g.,* Newberg On Class Actions, § 9:62, p. 540 ("[T]he issue of determining individual claims can be avoided by the court's authorization of a

class recovery distribution to class members on some per capita, average, or formula basis from available records, without the need to file individual proofs of claim.").

Here, the proposed settlement requires proof of claim, but does not propose to compensate the claimants for the amount of the claim. Instead, each claimant will receive a pro rata share of the fund. While the size of the pro rata share will include a consideration of the proportional amount of damage attributable to the claim, there is no certainty that the recovery will have any relationship to the actual claim. Moreover, there is no benefit whatsoever to silent class members, or class members who might fail at one of the rigorous claims-making steps imposed by the settlement. The interests of these class members must still be considered in determining the propriety of the settlement.

### D.     The Incentive Awards for Class Representatives are Improper and Excessive

Class representatives are not entitled to receive incentive fees in exchange for their agreement to serve as class representative. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1176 (4th Cir. 1975) ("class representatives 'chose to bring their action as a class action … In so doing, they disclaimed any right to a preferred position in the settlement.'"). *See also Kincade v. General Tire and Rubber Co.*, 635 F.2d 501, 506, n.5 (5th Cir. 1981); *Staton* v. *Boeing*, 327 F.3d 938, 976 (9th Cir. 2003) ("Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement").[4]

Here the class representatives seek substantial windfalls. USS alone requests $300,000. There is no way to compare this number to what may be recovered by the average class member because there is no information about average class member recovery estimates, such a number

---

[4] Indeed, according to one scholar, incentive fees are only granted in 28 percent of all class action settlements. (*See* Theodore Eisenberg and Geoffrey Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study* (2006) 53 UCLA L. Rev. 1303, 1307.)

would be fraught with difficulty anyway, and we have no information about USS's holdings or what it stands to recovery as a class member.

By way of comparison, the Ninth Circuit has held that incentive fee awards that are 16 times higher than compensation to average class members are excessive. *Staton*, 327 F.3d 938. As a general guideline, incentive fees that are 4 times, 16 times, 100 times, or even higher than absent class member compensatory awards are excessive. *Staton*, 327 F.3d at 946, 975; *Murray v. GMAC Mortgage Corp.* 434 F.3d 948, 952 (7th Cir. 2006); *Gulino v. Symbol Technologies, Inc*. 2007 U.S. Dist. LEXIS 76915 (E.D.N.Y. Oct. 17, 2007); *Sheppard v. Consolidated Edison Co.* 2000 U.S. Dist. LEXIS 20629 (E.D.N.Y. Dec. 21, 2000).

In addition to general class action incentive principles, the instant request for an incentive award must comply with the Private Securities Litigation Reform Act. While the PSLRA imposes some significant duties on class representatives, it also strictly limits incentive recovery. "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award ***of reasonable costs and expenses (including lost wages)*** directly relating to the representation of the class to any representative party serving on behalf of a class. 15 U.S.C. § 78u-4. The statute has been construed to reasonably compensate for employee time spent working on the case for the benefit of the class. However, there is no way for the Court to calculate the reasonableness of the hourly "lodestar" offered by USS, which is only presented in a bulk number. Moreover, it is highly questionable that an institutional class representative would be entitled to such significant compensation without a clear understanding of why it can be considered "lost wages." The total amount requested here is above and beyond the typical modest requests to

actually compensate for expenses and lost time. Since USS admits it incurred no expenses here, an incentive award that equals several full-time executive annual salaries is improper and implausible.

### E. The Attorney Fee Requested by Class Counsel is Excessive and Unsupported

Any award of attorneys' fees begins with the lodestar calculation of the hours reasonably necessary to fulfill the purposes of the litigation. Any award must be "guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation … ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations'" *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)*,* quoting *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F.Supp. 160, 163 (S.D.N.Y 1989). Here, the required lodestar analysis is impossible because class counsel presents only bulk numbers, and fails to even attempt any showing that the hours incurred were reasonably necessary.

Having failed to even begin to support the threshold inquiry, any discussion of the multiplier and percentage cross-check is premature. However, it should be noted that class counsel's own exhibits comparing multipliers appears to show that the requested multiplier would result in a disproportionately high fee award.

///

## III.
## CONCLUSION

In light of the foregoing, Objector Bueno respectfully requests the Court deny final approval of the class action settlement.

Dated: May 11, 2018     JOSHUA R. FURMAN LAW CORP.


By:  /s/ Joshua R. Furman
Joshua R. Furman
*Attorney for Objector*
SPENCER R. BUENO

## **STATEMENT OF COUNSEL RE: SECTION 16 OF NOTICE**

In the past five years, I have filed objections to class action settlements as counsel for objectors in the following: *Schlesinger v. Ticketmaster* (Los Angeles County Superior Court); *In re Sony PS3 "Other OS" Litigation* (U.S. District Court for the Northern District of California). In both cases, the settlement opposed was initially rejected by the trial court before reworking and resubmission by the parties.

Dated: May 11, 2018　　　　　　　　　JOSHUA R. FURMAN LAW CORP.

　　　　　　　　　　　　　　　　　　By:　/s/ Joshua R. Furman
　　　　　　　　　　　　　　　　　　　　Joshua R. Furman
　　　　　　　　　　　　　　　　　　　　*Attorney for Objector*
　　　　　　　　　　　　　　　　　　　　SPENCER R. BUENO

## CERTIFICATE OF SERVICE

I, Joshua R. Furman, hereby certify that on May 11, 2018, a true and correct copy of the foregoing document was served upon Counsel of Record via the Court's ECF system.

Dated: May 11, 2018   JOSHUA R. FURMAN LAW CORP.

By:   /s/ Joshua R. Furman
Joshua R. Furman
*Attorney for Objector*
SPENCER R. BUENO